Good morning, Your Honors. May it please the Court, my name is Patrick E. Brown and I represent the appellant Zach Hillesheim in this matter. This morning I'd like to focus more on what is missing in both the District Court's ruling and in Hallmark's response to my client's appeal. In the District Court ruling, the District Court found in denying the motion to amend that encountering temporary obstructions more often does not change the fact that temporary obstructions do not violate the ADA. Now, it is our position that this statement, while potentially not accurate, that issue hasn't been decided by the Eighth Circuit, that this statement ignores many of the facts that are alleged in my client's complaint. Counsel, as a predicate matter, the definition of architectural, which is in the governing law here, it's not raised directly, but it's kind of hinted at with the temporary barriers point. Architectural, to me, implies structural. And in fact, if you look at the dictionary definitions, it talks about structure. So why isn't that the... That's correct. That's a good question. As far back as 1991, when the, during the passage of the ADA, the Attorney General, in talking about this case at the 56 Fed Reg, 35,544, at page 35,568, said that the requirement to remove architectural barriers includes the removal of physical barriers of any kind. For example, 36.304 requires the removal, when readily achievable, of barriers caused by the location of temporary or movable structures such as furniture, equipment, and display racks. Additionally, in that section he was talking about, 36.304B, which talks about the type of architectural barriers that are presumptually readily achievable to remove, number four is, states that rearranging tables, chairs, vending machines, display racks, and other furniture in order to provide for the removal of architectural barriers to allow, for example... The statute here supports that. Is that consistent with the statute that requires architectural barriers? Removal of architectural barriers? Yeah, exactly. Yes, and part of that has to do with the maintenance of architectural barriers. So, although, when we're talking about a path of travel, we might be talking about the space between two, what we would consider more permanent structures. If there's something there, although you could technically move it later, that is consistently narrowing that scope, that is creating an architectural barrier for my client. Because, although, because the functional width is much less than what is required under the regulations. Okay, thank you. So... You were not, you did not get the second amended complaint filed, right? Is that the status? You asked for it, but it was never really done. No, no, your honor. We filed, so what happened procedurally in this case, there was an answer, first, I believe it was November 23rd of 2016, then a notice of motion to dismiss, and then the brief for the notice of, that the notice of motion to dismiss was filed after my client's right to amend had passed. And we filed one, not a multiple, but one attempt to amend the complaint, and that is what we are appealing here. It's our first attempt to amend the complaint. Yeah, but it was not accepted. It was not accepted by the court, right? The court said in the ruling that it was, that they were not going to allow us to amend the complaint. Right. Right. But it's the first amended complaint, not the second. Thank you very much. And futility was the reason, right? It was futility based on an assertion that we're only saying that there's temporary obstructions, and temporary obstructions, even if they're repeated, is not sufficient to state a claim. Counsel, let me interrupt you. I know there are many cases that say that we take the favorable, at the motion to dismiss stage, we take all favorable inferences, you know the line of cases. Yes. Is there anything that says you take the favorable inferences from the exhibits? You filed exhibit A, I think there are three pictures here that I found. Yep. I'm not sure if that's specifically, excuse me, addressed, but that is part of the complaint, and especially in a case like this, where we're talking about architectural barriers, and photographs are very helpful for both the court and for the defendant to know what we're talking about. They were incorporated in your complaint. Yes. And is it the three pictures that my clerk found? I believe so, yes. Are there three of them like this? Yes. Yeah. I know they're in your briefs too, but I want to be sure what was in the record. Yeah. Did you also file this under readily accessible? Title III discrimination in 12-183-A1 about readily accessible? The public accommodations must be readily accessible. Right. Readily accessible. So you didn't rely solely on architecture. Correct. Because we were saying that they're failing to maintain those accessible features. There's not a definition of architecture in the law, pardon my ignorance. No, but we did talk a little bit about that earlier. Okay. No, no. I heard your discussion, but mine's a simpler point. Right. It's not defined in the law. That is correct. Thank you. Proceed. Okay. So as an initial matter, with respect to whether or not the complaint itself only alleged temporary barriers, that's not a correct reading. There's, for example, paragraph 12 of both our original and amended complaint, which talks about displays and excess merchandise. It does not say that they are temporary in nature. But on a more legal side of things, because we have, again, it has not been decided by this court, but in the Ninth Circuit, in the Chapman case from 2015, there's a situation that's very similar to what we have in this case. It was a situation where a plaintiff went to the same store on multiple occasions, and each time that he went there, he encountered excess merchandise or seasonal displays that narrowed the functional width of the aisles to below the 36 inches, which is required under the 2010 standards. Based on that, the court found that he had not only that he had adequately alleged a violation of the ADA, but that an expert report provided by the defendants in which on the date their expert went there, there was no excess merchandise, was not enough to avoid summary judgment being entered in the favor of the plaintiff. And I will reserve the remainder of my time. You may. Thank you. Mr. Kletcher. Good morning, Your Honors. May it please the Court. This is a case involving a court's denial of a motion to amend related to a claim related to temporary barriers in the store of a Hallmark by my client Myron's Cards and Gifts. The court denied the motion to amend and in doing so did not abuse its discretion. First of all, the court determined that there was no architectural barriers. As Your Honor pointed out, the definition of architecture involves a structural barrier. Yeah, but the problem then becomes, and that's why I asked about this, the regulation, she cited some language, but it also includes things like potted plants, and a potted plant is not a structural item. And so it seems to me that, you know, whatever the real meaning of architectural is, the regulations seem to have a much broader or have accorded a much broader meaning than maybe common parlance would. And I agree that the regulations, as they're worded, talk about those type of things, and I think they talk about it in the sense of accessibility, as Your Honor was talking about. Accessibility to this particular item. So, for example, if there's an elevator and you have a plant in front of the elevator, this is an example in the regulations, and you can't reach the button to push, that's an accessibility issue. And that's a different thing that is pled here. What is pled here is an architectural barrier. I thought they pled accessibility, too. I just asked counsel that. Well, and when you look at the complaint, there's no reference to that statute. If you look at it, it talks about 12182, and it talks about the architectural barrier graphs. In paragraph 22 of the complaint, it's at APP5. If you look in the appendix there, you'll see the reference to that, and you don't see a specific reference to an accessibility issue related to it. So I think that's a little bit different. Well, in paragraph 26 of the, I think it's the original complaint, they do cite the general provision about discrimination, and they do say accessible in paragraph 28, and they do cite the right statute, I think. Yeah, they do, I think. So are you sure that they don't have an accessibility claim here? I'm trying to find the original complaint you're referring to because I'm looking at the amended one. I think that's, yeah, that's what I'm looking at, the original complaint. I'm confident of that now. As you know, we take everything favorable at this point to the pleader. And I'm looking at the paragraph. I don't see the reference in it that you're talking about. Okay, look at page 6 of the complaint, paragraph 26, the general discrimination provision. Yes, they're talking about the general provision in the very beginning, which is the basis for it, but when they actually talk about what they're alleging was wrong, they're talking about the architectural barrier component, and that's in the ‑‑ Don't you think that one in paragraph 26 is for the whole title? I don't think that covers an accessibility, or at least it doesn't give notice that there's a claim of accessibility related to it. Is 302.12.182, are they the same thing? Because she's, by the way it's cited, it says 302. Yeah, she's talking about just the section and title of title 3. So that's the general provision of it, but if you go to 12.182, that talks about the specific architectural barrier, and that's what she specifically alleges if you look in its paragraph 29. How about 30, full and equal access, procedure of full and equal access? Because I don't think you have to cite the statute, right? You've got to give notice. I don't think you'd have to say the statute, but you'd have to plead specific facts that say they didn't have access. How about the Minnesota claim? It looks a little better on that. And that's in paragraph 35. We should refer, by the way, to Mr. Hilston here. Again, it's just a general legal conclusion, I think, what we're talking about. Well, it's a statute. It is, it is, it is a statute. The factual allegations themselves, though, and what it talks about in the specific factual allegations, are these photographs that show these pictures of what's there. And you can see from the photographs there's actually labels on the boxes yet, and the regulations as well. Yeah, but what about the pictures where it looks like the seasonal display to get the wrapping stuff, which I bet you there is from the 1st of November at least through January. Well, the pictures are from, according to the complainant, from October 6th. And if you look at page 53 of the appellee's appendix, you'll see in Mr. Evanson's affidavit he attaches the layout for the displays, and he says specifically in there that they're going to start putting up the Christmas displays on October 3rd. So right at the time when this happened, right? And so they're just getting all this inventory in and starting to take it out to put it in place. The expert affidavit that we submitted showed that these wrapping papers are 39.5 inches of space between them in the aisle, which is more than the 36 that are required. But, you know, one of the problems with this is the amended complaint comes in and says not only do we have the pictures but we have, I think it was 15 other times or more than a dozen other times he visits the store and he found that there's inaccessibility. And we have to take that as true, at least at the motion to dismiss stage, don't we? Well, I disagree with you there because of the Twombly decision and the requirement to be specific in your facts. You just can't make a general statement that he ran into... I don't know what's general about that, though. Well, he doesn't... 15 times the last four years, obstructed by displays in excess, merchandise each time, that's fairly specific. But he doesn't say in there that it was obstructed to be less than 36 inches. There's a difference between having something there and having 36 inches of space. And as the courts have recognized, these types of ADA claims sometimes come down to inches. And if you don't follow Twombly and plead those kind of things, how is there supposed to be a defense to that? So you're going on Twombly, not on the merits, because if we got to the merits, we'd be contrary to the Chapman case, right? The Chapman case, I don't think you even hardly discuss it, is absolutely contrary to your position. I think there's two different parts. It's contrary to my position about the architectural barrier. It's contrary to that. But on the facts as they're pled here, it's not contrary. So you're arguing Twombly is the way we should decide the case? In part, yes. Twombly is how you should decide the case. The way you answered on Chapman, it sounded like almost in ho, but just smile and go to your next point. Well, no. I mean, what I'm getting at with what I'm trying to say on Chapman, I want to make sure I'm clear on this so you understand my position. My position is that Chapman is wrong in their decision. Right. But I also say, and the facts is alleged here in this particular complaint, that they haven't alleged sufficiently under Twombly to establish that there is a violation of the ADA. Did you say your key concern was a lack of an allegation at the width of the aisles? Yeah, as it relates to that specific paragraph on the 15 visits. So you don't think that? They make a general allegation later on where they say that there was less than 36 inches of space, but they don't say when that was or where it was. So it goes back to the case law where you can't just make general allegations of what the law is. You have to be specific in your factual allegation in and of itself. And it's not enough to say, for example, I visited the store 15 times, and I don't know if this particular individual is in a wheelchair, I can't remember, but I couldn't get through. It was inaccessible to me. There were things in my way, and I didn't have the space to get through. That wouldn't be enough? Well, I think if he alleged where it was and what he couldn't get through on the day that that happened, absolutely, that would be sufficient. But I think when you just make a general broad allegation, I mean 15 times, frankly, over four years, so 365 days a year, 15 times. You know what that averages out to? I did the calculation this morning. One percent of the days. But absent that problem that you identify, don't you agree that that would create an inference? If you show up 15 times, at each of the 15 times there's inadequate space. Assuming, again, that it's properly plaid, 36 inches, et cetera, isn't that enough to create an inference that these are permanent barriers or non-temporary barriers at that point? I would disagree on a retail establishment, because a retail establishment, you're going to have restocking the shelves. You've been to Target? See how many times they're restocking the shelves all the time? You can't have that. I mean, 15 times over the course of 1,004 and 60 days. Well, I assume that this particular plaintiff didn't go every day, and so maybe your argument is he should have plaid, well, I only went 25 times, and 15 of the times they had stuff in the way. I don't know. It seems like you're elevating the standard a little higher than what the pleading standards require. Maybe I'm wrong about that, and you can tell me why. Well, I'm not trying to elevate it beyond what Tom Lee requires. I'm trying to say in an Oliver case from the Ninth Circuit talked about this, it's referenced in the Sharp case, but it talked about the fact that you've got to lay out the specifics of what you're alleging was wrong, what the actual barrier was, so that the party has notice of what the claim is. Don't you think the photos do that? Do we take the favorable inferences from the photos? I think if you look at the photos, and Your Honor, may I answer your question briefly? Oh, no, no, you please do. The photographs show the clear labels on it. I think the only inference you can make. Well, you can almost see the holiday wrappings. You've seen the pictures. Right, and you've seen holiday wrappings when they come in the store and they're sitting there and they're waiting to be put out on display. Right? You can see it. I've seen them sitting there where you're supposed to buy them from there. Yep. Because they turn over quickly like food in the grocery store. But if you take a look at the photograph, the photographs are shot from both ends. How do we know that's not storage? You say it's restocking. It looks to me a little more like storage, and that's really bad. Was storage alleged here? I know we're beyond our time. I don't recall, to be honest with you, Your Honor. We'll find out. Any questions by other members of the panel? No. Okay. Listen, thank you for your argument. Thank you, Your Honor. Sure. Ms. Brown, we're back to you. Thank you, Your Honor. With respect to the question regarding the photographs, the top photograph shows, as you were alluding to, wrapping paper that's in a box that's out for sale. That same box, or perhaps a box that was replaced after the wrapping paper that was in that box, is actually shown in the photographs that were attached to the response to our amended complaint with respect to the expert's report. So that is not, that's a photograph of something, the display, that is, either it's the exact same one or it keeps on being put back in the same place throughout the holiday season. Would you talk just briefly about the accessibility? Do you make a claim under 12183 that it's about readily accessible? So we talk about, throughout the complaint, there are various times we talk about. What's your best paragraph, readily accessible? Let's see, 6 says we're moving under 12181 through 12189, and let's see, in paragraph, when we're discussing the cause of action, we specifically say, although we don't cite 2 of the 83, we do specifically say that we're asking for an injunction for the defendant to make Hallmark readily accessible. Which paragraph are you if you're at a paragraph? Paragraph 32 of the original complaint. 32, mm-hm. And because the numbers are a little screwed up. You use the term accessible, go ahead. Yeah, readily accessible at that point as well. Okay. And then, so, again, both the words, the allegations in the complaint, as well as the photographs, both show things that are not, even if we were to say that that was just a very temporary staging area for the restocking of shelves in some of those photographs, they all show also displays that were there on an ongoing basis. And that is what it also is alleged in the complaint. We have to make an inference from the photograph, right? Well, we specifically say that there are displays and excess merchandise, it's in paragraph 12 of the original complaint, and I believe it's paragraph 15 of the amended complaint as well, both, that he found the displays and excess merchandise obstructed the aisles. And that he found it difficult to access the aisles to conduct his shopping, due to the many obstructions and blocked shelves that greatly reduced the clear width of the aisles. So the combination of the photographs and what is in the complaint, both the first and the amended complaint, would put it forward, make clear that it's not just temporary stuff we're talking about. Thank you for your argument. Thank you. Case 17-1408 is submitted for decision.